FILED
2013 Mar-11 PM 04:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DANNY LEE BARNWELL,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:11-CV-04174-RDP** |
| | } | |
| **SOCIAL SECURITY** | } | |
| **ADMINISTRATION, COMMISSIONER** | } | |
| **MICHAEL J. ASTRUE,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Danny Barnwell ("Plaintiff") brings this action pursuant to Section 1383(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security[1] ("Commissioner") denying his application for supplemental security income ("SSI") under the Act.  *See* 42 U.S.C. § 1383(c).  For the reasons outlined below, the court finds that the Commissioner's decision is due to be affirmed.

## I.    Proceedings Below

Plaintiff filed an application for SSI under Title XVI of the Act on January 6, 2010. [R. 26, 127-32].  Plaintiff alleged a disability onset date of January 31, 2009. [R. 127].  Plaintiff's application was denied on March 24, 2010. [R. 26].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 26, 2011. [R. 26, 46-85].  In his June 16, 2011 decision, the ALJ denied disability benefits, concluding that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Act. [R. 34].  After the Appeals Council denied Plaintiff's

---

[1]On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security.

request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.  [R. 1].  *See* 42 U.S.C. § 405(g).

At the time of the hearing, Plaintiff was 43 years old and had completed his high school education. [R. 52, 65].  Plaintiff can read, write, do basic math, and make change. [R. 65].  Plaintiff last worked as a custodian at a library. [R. 66].  He quit after a disagreement with a supervisor. [R. 66-67].  He did not attempt to find work anywhere else. [R. 67].  He claimed he cannot now work because of his pain. [R. 67].

At the hearing, Plaintiff gave testimony about the specifics of his condition.  Regarding his back pain, Plaintiff testified that he has scoliosis and his back "crunches all the time." [R. 58].  He also alleged that he experiences pain from sciatica that causes his legs to "feel like they are burning off all the way down to [his] ankles." [R. 58].  Plaintiff told the ALJ that he experiences the pain every day and that it typically lasts "a few hours." [R. 59].  Without medication, Plaintiff testified that his pain is between a 7 (seven) and an 8 (eight) on a 10 (ten) point pain scale. [R. 59].  With medication, Plaintiff stated his pain is "about a five or six." [R. 59].  The pain radiates from Plaintiff's back, to his hips, to his legs, to his ankles, and back. [R. 59].  Plaintiff alleged that he originally hurt his back due to a variety of work-related injuries. [R. 60].  Plaintiff only takes over the counter medication including Ibuprofen, Motrin, St. John's Wort, and Garlic. [R. 58].  Plaintiff testified that he suffers no side effects from these medications.  [R. 58].

When asked about his daily activities, Plaintiff responded that his wife and brother help him get dressed, he tries to do the dishes, he sometimes shops for groceries with his wife, and he does some other light housework. [R. 60-62].  Plaintiff testified that he has a cell phone but does not text and that he responds to e-mails on his computer. [R. 60].  Plaintiff also sells books on eBay, which

he says helps provide gas money. [R. 61].  Plaintiff also testified that he sometimes likes to research

on the computer. [R. 61].  Plaintiff claimed he needs between 10 (ten) and 15 (fifteen) breaks during

the day. [R. 61].  Plaintiff indicated that he lies down several  times a day. [R. 71].  Plaintiff also

testified that he can climb stairs occasionally but that he cannot bend and touch his toes. [R. 71-72].

Plaintiff also claimed that he has difficulty getting in and out of his house because of a step. [R. 53].

Regarding his depression and anxiety, Plaintiff testified that he cannot ride in a car for long

periods of time because he gets anxious when cars pass by quickly. [R. 55-56].  Plaintiff alleged he

has trouble sleeping because he has nightmares. [R. 64].  He talks to a psychologist every week and

visits with him once or twice a month.[2]  [R. 56].   The psychologist has not prescribed any

medications. [R. 57].

Plaintiff spent time in rehabilitation for alcoholism in 1991 or 1992. [R. 68-69].   He

continues to drink and says the amount fluctuates if he gets stressed or anxious. [R. 69].  He drinks

beer but does not consume hard liquor. [R. 69].  Plaintiff does not have a driver's license and his

wife drives him wherever he needs to go. [R. 54].

In response to a hypothetical posed by the ALJ, a vocational expert ("VE") testified that

someone of Plaintiff's age, education, prior work experience, and with his RFC could not perform

Plaintiff's past work as a custodian but could perform work as a laundry worker, a packing line

worker, or a cleaner. [R. 82].   In response to a hypothetical posed by the ALJ incorporating

Plaintiff's testimony as true, the VE testified that Plaintiff could not perform these jobs. [R. 83].

---

[2]In a pre-hearing order, Plaintiff's non-attorney representative stated that Dr. Slate is a retired psychologist and does not charge Plaintiff for his visits due to Plaintiff's lack of resources. [R. 198].  Dr. Slate also does not keep records of Plaintiff's sessions, which is why none appear in the record. [R. 198].  Plaintiff's non-attorney representative engaged Dr. Slate to perform a mental RFC but states in his pre-hearing order that "this is a very unusual situation" and he is "not sure of the probative value of this RFC." [R. 198].

In support of his claim, Plaintiff presented medical records beginning with a July 25, 2004 radiology report from Decatur General Hospital. [R. 204]. This report indicated that Plaintiff's lungs were clear, his heart size was normal, and soft tissue around his neck was normal. [R 204]. Plaintiff submitted a second radiology report from Decatur General dated July 25, 2007, which indicated that Plaintiff had "good alignment" and "no compressed vertebrae" in his back. [R. 208]. The report did state that Plaintiff had mild scoliosis with "mild degenerative changes." [R. 208].

A physical therapy report from Encore Physical Therapy dated October 3, 2007 indicated Plaintiff had increased back pain and decreased function. [R. 211]. The report notes that Plaintiff denied any numbing or tingling sensation. [R. 210]. The therapist recommended continued strengthening exercises and other therapeutic activities, but Plaintiff did not schedule another visit. [R. 212].

The next medical records outline multiple visits to Bernice Swain, D.O. [R. 213-43]. Plaintiff first saw Dr. Swain on March 20, 2007 for problems associated with his allergies and sinuses. [R. 216]. Dr. Swain's assessment notes from this visit are difficult to read; however, it appears Plaintiff was only treated for symptoms related to seasonal allergies, including burning in his throat, nose, and eyes, and red spots on his legs. [R. 230-31].

Plaintiff saw Dr. Swain again on April 12, 2007 for an evaluation of his allergy symptoms and his back pain. [R. 228]. These notes do not comment on Plaintiff's back pain other than to mention it as a current and past medical problem. [R. 228]. As a treatment plan, Dr. Swain recommended a low fat diet, exercise, and weight loss. [R. 229]. Plaintiff returned for a follow-up regarding blood work on April 24, 2007. [R. 226]. Treatment notes are difficult to read but do not

indicate that Plaintiff was suffering from any back pain as this phrase is not circled and his musculoskeletal readings were normal. [R. 226].

Plaintiff saw Dr. Swain again on July 25, 2007 for "low back pain," allergies, and for an evaluation of his cholesterol. [R. 224]. Dr. Swain circled "allergies" and "back pain" on her treatment notes but her treatment plan is illegible. [R. 225]. On September 27, 2007, Plaintiff saw Dr. Swain again to follow-up on his back pain. [R. 221]. Under the "Assessment" heading, Dr. Swain indicated Plaintiff suffered from scoliosis and low and mid back pain. [R. 222]. Although many portions of her notes are illegible, Dr. Swain did prescribe physical therapy. [R. 222].

Plaintiff did not see Dr. Swain again until July 30, 2008. [R. 219]. Plaintiff told Dr. Swain his back pain "ha[d] been going on for a long time." [R. 219]. Plaintiff also wanted to refill his Wellbutrin prescription. [R. 219]. Once again, treatment notes are difficult to read; however, Dr. Swain indicated Plaintiff had "lumbar pain." [R. 220]. On August 13, 2008, Dr. Swain's office notified Plaintiff to schedule a follow-up visit for his lab results, and he informed the office he did not have health insurance. [R. 218].

On May 4, 2010, John Haney, Ph.D., performed a consultative psychiatric examination of Plaintiff at the behest of the Social Security Administration. [R. 244-46]. Dr. Haney noted that Plaintiff "appeared anxious and sad, but he was cooperative although he was not certain as to the reason for his appointment." [R. 245]. At the time of the examination, Plaintiff was not taking any prescribed medications and he had not seen a physician in two or three years due to lack of insurance or money. [R. 245]. Dr. Haney stated that Plaintiff was "oriented to time, place, and person" and "was able to subtract serial sevens but had difficulty with other simple problems in change making and arithmetic." [R. 245]. Plaintiff's recent and remote recall appeared intact and, Dr. Haney

5

estimated Plaintiff's intelligence as "at the average range." [R. 245].  Although Plaintiff's mood appeared sad, his "conversation appeared logical and goal directed." [R. 245].

Plaintiff told Dr. Haney that he "helps around the house, cooking and cleaning" and that he reads, but Plaintiff denied any other hobbies or leisure activities. [R. 245].  Dr. Haney indicated that Plaintiff "apparently has some scoliosis with mild degeneration." [R. 245].  Other than depression and anxiety, Plaintiff denied any other physical or emotional problems. [R. 245].  Dr. Haney diagnosed Plaintiff with depressive disorder, anxiety disorder, posttraumatic stress disorder, and alcohol abuse. [R. 246].  Dr. Haney concluded that Plaintiff may need further assessment of his depressive symptoms and his alcohol abuse. [R. 245].  Dr. Haney opined that Plaintiff's "ability to function in most jobs appeared moderately impaired by physical and emotional limitations." [R. 246].  Dr. Haney further stated that with successful treatment, including abstinence from alcohol, Plaintiff's "psychiatric condition may improve" in the next six to twelve months. [R. 246].

On March 8, 2010, Marlin Gill, M.D., completed a social security disability determination exam. [R. 247-50].  Dr. Gill noted that Plaintiff complained that he could not work "because of low back pain." [R. 248].  Dr. Gill's examination notes indicate that there is no history of a specific back injury. [R. 248].  Plaintiff told Dr. Gill that Dr. Swain examined x-rays of his lumbar spine on July 25, 2007 and that they were normal. [R. 248]. Plaintiff also told Dr. Gill that x-rays of his thoracic spine showed some "mild scoliosis" with "mild degenerative changes." [R. 248].  Dr. Gill noted there Plaintiff had no further evaluation and no MRI after these x-rays in July 2007. [R. 248].  Plaintiff also complained of knee pain; however, Dr. Gill indicated that this pain has never been evaluated. [R. 248].  Plaintiff told Dr. Gill that he went to rehabilitation for alcoholism about

seventeen years before but still "drinks heavily once or twice a week using up to a twelve pack of beer each time." [R. 248].

Dr. Gill's examination notes indicate that Plaintiff's "upper extremities appear normal and symmetrical" and that he was able to use his "hands and arms normally with no limitations." [R. 249]. Plaintiff demonstrated full range of motion in his joints. [R. 249]. Dr. Gill noted that Plaintiff's back "look[ed] normal" and that he saw no scoliosis or palpable abnormalities. [R. 249]. Plaintiff "jump[ed] and complained bitterly of pain with just light fingertip touch over the lumbar spine." [R. 249]. Plaintiff also complained of pain with lumbar movement. [R. 249]. Dr. Gill indicated that Plaintiff's knees appeared normal and there was no swelling or other deformity; however, Plaintiff complained of pain when he moved his knees. [R. 249]. Plaintiff was able to squat down from the standing position and come back up again holding onto a table for balance, but he complained of knee pain when he did so. [R. 249]. Plaintiff was able to walk on his tiptoes and heels. [R. 249]. Dr. Gill diagnosed Plaintiff with low back pain,[3] undiagnosed bilateral knee pain, and alcoholism. [R. 250].

On March 24, 2010, Robert Estock, M.D., completed two Psychiatric Review Techniques. [R. 255-82]. Regarding Plaintiff's substance abuse, Dr. Estock determined that Plaintiff met listing 12.09 of the regulations. [R. 255]. Dr. Estock concluded that Plaintiff's alcohol abuse resulted in marked limitations regarding Plaintiff's activities of daily living, difficulties in maintaining social functioning, and in maintaining concentration, persistence, or pace. [R. 265]. Dr. Estock noted that Plaintiff's substance abuse resulted in no episodes of decompensation. [R. 265]. Dr. Estock

---

[3]Dr. Gill did refer to the x-rays that showed some mild scoliosis with mild degenerative changes. [R. 250].

7

commented that "with abstinence from alcohol [Plaintiff's] psychiatric condition would improve." [R. 267].

Regarding Plaintiff's anxiety and depressive disorder, Dr. Estock determined that these impairments were not severe and resulted in mild limitations in Plaintiff's activities of daily living, maintaining social functioning, concentration, persistence, and pace. [R. 269, 279].  Plaintiff's anxiety and depression resulted in no episodes of decompensation.  [R. 279].  Dr. Estock concluded that the severity of Plaintiff's alleged mental impairments were not consistent with or supported by presented objective evidence.  [R. 281].

On May 16, 2010, at the request of Plaintiff's non-attorney representative, Joe Slate, Ph.D, conducted a psychological evaluation of Plaintiff. [R. 283-88].  Dr. Slate indicated that Plaintiff appeared to be over average intelligence and that he was cooperative throughout the examination. [R. 285].  Plaintiff "was appropriately oriented to time, place, person, and situation" and was responsive to Dr. Slate's questions. [R. 285].  At times, Plaintiff even volunteered unsolicited but relevant information. [R. 285].

Dr. Slate noted that Plaintiff presented "a chronically depressed mood, low self-esteem, feelings of hopelessness, fatigue, and poor concentration." [R. 285].  Dr. Slate also commented that Plaintiff has difficulty making decisions and experiences "extreme constriction of activities of daily living." [R. 285].  Dr. Slate opined that Plaintiff's "ability to respond to customary work pressures and perform simple tasks in the work setting is profoundly limited." [R. 285].  Dr. Slate diagnosed Plaintiff with post traumatic stress disorder ("PTSD") and dysthymic disorder. [R. 286].

Dr. Slate determined that Plaintiff has marked limitations in the following areas: (1) responding appropriately to supervisors; (2) responding appropriately to co-workers; (3) responding

appropriately to customers or other members of the general public; (4) using judgment in simple, one or two step work related decisions; (5) dealing with changes in a routine work setting; (6) understanding, remembering, and carrying out detailed or complex instructions; and (7) maintaining social functioning. [R. 287-88].  Dr. Slate also concluded that Plaintiff has extreme limitations in the following areas: (1) using judgment in detailed or complex work-related decisions; (2) responding to customary work pressures; and (3) maintaining, attention, concentration, or pace for periods of at least two hours. [R. 287-88].  Dr. Slate further indicated that Plaintiff has moderate limitations in the following areas: (1) understanding, remembering, and carrying out simple, one or two step instructions, and (2) maintaining activities of daily living. [R. 288].  Dr. Slate also opined that Plaintiff could manage benefits in his own interest and that if Plaintiff's alcohol use were to stop there would not be any changes in his noted limitations. [R. 288].

Plaintiff also submitted treatment records from Decatur Chiropractic Center by Dr. Robert Larson from October 6, 2010 through December 23, 2010. [R. 289-96].  Plaintiff was treated over the course of eight visits. [R. 296].  The treatment notes themselves are illegible, but Dr. Larson did provide a letter summarizing his treatment. [R. 290].

Also included in the record is a letter from Mr. Mark Jacob, a licensed counselor and social worker, dated March 22, 2011. [R. 298].  This letter indicates that Plaintiff and his wife have been seen for marital counseling since December 15, 2009 but no treatment notes are provided. [R. 298].

## II.   ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant

physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence,

in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 6, 2010, the application date. [R. 28].  The ALJ found that Plaintiff suffers from degenerative disc disease, which is a "severe" impairment as defined by the Act. [R. 28]. Nonetheless, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the requirements for any impairment in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 28].  After consideration of the entire record, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), and that he has the following limitations: lifting and carrying up to 20 (twenty) pounds occasionally and up to ten (10) pounds frequently; he should never perform activities involving climbing of ladders, ropes, or scaffolding; and, he should not work in hazardous areas such as working at unprotected heights or around dangerous machinery. [R. 29]. The ALJ also found that Plaintiff would have no more than mild limitations related to his mental impairments. [R. 29].

11

The ALJ concluded that Plaintiff is unable to perform past relevant work as a custodian. [R. 33]. The ALJ stated that transferability of job skills is immaterial because Plaintiff is not disabled under the Medical-Vocational Rules. [R. 33]. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2; SSR 82-41, 1982 WL 31389. The ALJ further found that there are a significant number of jobs in the national economy that Plaintiff could perform, such as laundry worker, packing line worker, and cleaner, all of which would Plaintiff to work with the above-mentioned limitations. [R. 33-34]. Thus, the ALJ ruled that Plaintiff is not disabled as that term is defined in the Act, and therefore, is not entitled to SSI. [R. 34].

## III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision reversed, or in the alternative, remanded for further consideration. [Pl.'s Mem. 11]. Plaintiff argues that the ALJ's decision is not supported by substantial evidence and improper legal standards were applied because the ALJ improperly characterized and misinterpreted the opinion of psychological examiner Dr. Haney. [Pl.'s Mem. 7]. Plaintiff also submits that the ALJ assigned too little weight to another one time psychological examiner, Dr. Slate. [Pl.'s Mem. 9].

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the

facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.,* citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1259.

## V.    Discussion

### A.    The ALJ Properly Considered and Weighed the Opinions of Dr. Haney and Dr. Slate

Plaintiff claims that if the ALJ had properly considered and weighed the opinions of Dr. Haney and Dr. Slate, the ALJ would have found that Plaintiff's depression was a "severe" impairment at step two of the sequential evaluation process. [R. 7-10]. As support for this argument, Plaintiff maintains that the ALJ committed the following errors: (1) mischaracterizing Dr. Haney's opinion; (2) failing to give Dr. Haney's opinion conisderable weight; and (3) assigning "little weight" to Dr. Slate's opinion when he, like Dr. Haney, was a one-time examiner. [R. 7-10].

Regarding the ALJ's characterization of Dr. Haney's opinion, the ALJ stated in his decision that Dr. Haney noted that with successful treatment, including abstinence from alcohol, Plaintiff's psychiatric condition *would* improve. [R. 32] (emphasis added). What Dr. Haney's report actually

stated was that "with successful treatment, including abstinence from alcohol, [Plaintiff's] psychiatric condition *may* improve in the next six to 12 months." [R. 246] (emphasis added). The court understands that the ALJ did not precisely state Dr. Haney's opinion. However, Plaintiff's apparent argument — that the ALJ should have found his depression a severe impairment based upon this conclusion — is unavailing. *See* 42 U.S.C. § 1382c(a)(3)(A) (stating that an individual is considered disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"). Even if the ALJ had precisely stated Dr. Haney's opinion that Plaintiff's psychiatric condition *may* improve in the next six to twelve months, this conclusion does not automatically support a finding of disability. If Plaintiff's condition may improve within six to twelve months, Plaintiff cannot establish that any psychiatric impairment would last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 1382c(a)(3)(A).

Plaintiff next asserts that despite the ALJ's statement that he gave "considerable" weight to Dr. Haney's opinion, this could not be the case because, had the ALJ done so, he would have found Plaintiff's depression to be a "severe" impairment. [R. 9]. Again, Plaintiff's argument misses the mark. The opinion of a one-time examiner, like Dr. Haney, is not entitled to great weight or significant deference. *See Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). Here, the ALJ gave "considerable" but not "controlling" weight to Dr. Haney's assessment. The ALJ specifically noted Dr. Haney's opinion that Plaintiff's "ability to function in most jobs appeared to be moderately impaired." [R. 32]. The ALJ also found that Dr. Haney's conclusions were consistent with the record as whole. [R. 32-33]. Although the ALJ gave "considerable" weight to Dr. Haney's opinion,

14

contrary to Plaintiff's assertions, this does not mean the ALJ must have then determined Plaintiff's depression was a "severe" impairment.  Even considering Dr. Haney's opinion that Plaintiff's depression moderately impaired his ability to function in most jobs, the ALJ found that without Plaintiff's substance abuse, he would not experience these impairments. [R. 28].  Thus, the ALJ impliedly rejected Dr. Haney's conclusion that Plaintiff's depression created moderate impairments in his ability to work and found that, based in part upon other portions of Dr. Haney's report, that without alcohol use, Plaintiff's depression would not cause significant limitations and therefore was not "severe" within the meaning of the Act. [R. 28, 32-33].

Finally, Plaintiff maintains that the ALJ committed error when he assigned "little weight" to Dr. Slate's opinion, when Dr. Slate, like Dr. Haney, was only a one-time examiner. [Pl.'s Mem. at 9-10].  Again, Plaintiff's argument is unconvincing.  An ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1987).  Here, the ALJ noted Dr. Slate's opinion that Plaintiff would have marked limitations in many areas; however, he also stated that these limitations were not consistent with the findings reported during Dr. Slate's evaluation. [R. 32].  Based upon this observation, and the fact that Dr. Slate only examined Plaintiff once, the ALJ assigned "little weight" to Dr. Slate's opinion.  The court is convinced the ALJ properly stated the weight accorded to Dr. Slate's opinion and the reasons why.  *See Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (the ALJ is "required to state with particularity the weight he gives to different medical opinions and the reasons why").  Plaintiff has not cited (and the court is unaware of) any authority preventing an ALJ from assigning different weight to the opinions of two one-time examiners.  Here, the ALJ stated his reasons for assigning "little weight" to Dr. Slate's opinion – notably, this his ultimate opinion is not

supported by his own examination findings. [R. 32]. Thus, the court concludes that the ALJ did not err in assigning "little weight" to this one-time examining physician while assigning "considerable weight" to another one-time examining physician.

In sum, the court finds that the ALJ properly considered and weighed the opinions of the one-time examining psychologists. But even assuming that he did not do so, and assuming further that the ALJ subsequently erred in failing to find Plaintiff's depression a "severe" impairment, the Commissioner's decision is nevertheless still due to be affirmed for the reasons explained below.

### B. Even if Plaintiff's Depression Was a Severe Impairment, the ALJ Did Not Err Because He Moved on to Step Three in the Evaluation Process

Even if the ALJ erred in not concluding that Plaintiff's depression was a "severe" impairment (which he did not), the Commissioner points out, and the court agrees, that this error was harmless because the ALJ continued with step three of the sequential analysis, which is all that is required at step two. "[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify to serve, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Here, the ALJ found that Plaintiff suffered from degenerative disc disease, a "severe" impairment under the Act. [R. 28]. Because the ALJ found that Plaintiff suffered from a severe impairment, he moved forward to step three of the process. [R. 28-33]. Therefore, the ALJ's failure to find Plaintiff's depression was a "severe" impairment is inapposite. *See Jamison*, 814 F.2d at 588. "[N]othing requires that the ALJ must identify at step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that it

has considered all of claimant's impairments, whether severe or not, in combination." *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. Appx. 823, 824-25 (11th Cir. 2010).

Plaintiff has not argued that the ALJ failed to consider his impairments in combination. Therefore, although it certainly appears from the record that the ALJ did so [R. 28], Plaintiff has waived any argument to the contrary. *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived.").

## VI.  Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. Therefore, the Commissioner's decision is due to be affirmed.  A separate order consistent with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___11th_____ day of March, 2013.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE